Gaston, Judge.
 

 It was necessary for the plaintiff’s lessor, in order to establish a title to the land in controversy, to shew that under his purchase at Sheriff’s sale he had acquired the interest therein which had descended from William Arrenton to his heirs at law.
 
 According to the
 
 settled law of this State, the Sheriff’s sale did not transfer that estate, unless there was a judgment, or order of court, warranting the execution under which the land was sold.
 

 The abstract from the records, in relation to the supposed judgment and the proceedings upon it, is not as full as we could desire. Especially we could wish that the execution itself had been set forth at length. But as we have no means of making the case more full than it appears upon the transcript, we have proceeded to consider it such as we understand it to be.
 

 It appears from the records of Perquimons County Court that there was an action there pending, instituted by one Thomas Long against the administrator of William Arrenton, in which action the defendant had pleaded “payment' and set off and fully administered,” at the-May Term, 1836, of the said court; that on the pleas of payment and set off, the jury found for the plaintiff; and on that of fully administered, returned a verdict for the defendant: whereupon the plaintiff had judgment for $168 and his costs of suit, to be taxed by the Clerk, and prayed for a
 
 scire facias
 
 to
 
 be
 
 awarded against the heirs. From the said May Term there issued to the succeeding August Term a writ, alleged to be a
 
 scire
 
 facias, commanding the Sheriff to summon the persons therein named, and styled “ the heirs at law of William Arrenton,” (some of them described as infants, and sued
 
 by
 
 guardians therein named,) personally to be and appear be
 
 *227
 
 fore the next term of the said court, “ to shew cause why Thomas Long shall not have judgment against the lands of said deceased in the hands of his said heirs for $150 besides interest and costs.” The Sheriff returned this writ executed, and thereupon, at the August Term, 1836, there is this entry on the docket of the court: “ Judgment pursuant to
 
 sci. fa.,
 
 andón motion, ordered that execution issue, and that the Clerk endorse thereon that the Sheriff will only sell the interest of the heirs of full age in the lands of William and James Arrenton deceased, and forbear as to the infant heirs; stay execution twelve months as to them.” From August Term there issued an execution, commanding the Sheriff of the lands of William Arrenton, descended to his heirs at law (naming them) to cause to be made the sum of $168 and costs of suit which Thomas Long had recently recovered in said court, and also his costs expended on the
 
 sci-re facias
 
 against the said heirs; and under this execution, the Sheriff sold and conveyed to the plaintiff’s lessor the land in controversy.
 

 It is evident that the judicial proceedings referred to were attempted to be fashioned after the model of those prescribed in our act cf 1784, (see
 
 Revised Code,
 
 c. 226, 1 Rev. St. c. 63,) but the attempt has been awkward and unsuccessful. The Stat. of 5 Geo. 2 c. 7, had made lands in the colonies liable to, and chargeable with,
 
 all
 
 just debts, and declared them assets for the satisfaction thereof, in like manner as real estates were, by. the laws of England, liable for debts due by specialty; and had also enactedthat they should be subject to the like remedies and process for seizing and selling the same for the satisfaction of such debts, as personal estates in the colonies were liable to for seizure and sale. In furtherance of the objects of this statute, our Legislature in 1777, (see Revised Code 1777, c. 115, s. 29,) enacted that process which theretofore issued against goods and chattels should issue against goods and chattels, lands and tenements; and that upon such process it should be the duty of the Sheriff to levy upon lands and tenements, if a sufficiency of goods and chattels could not be had to answer the exigency of the writ. But until the act of 1784, there was no
 
 *228
 

 legislative
 
 provision, by'which, on the decease of a debtor ^y simple contract, his lands, which, by the statute of
 
 George
 
 the Second, had been rendered liable for the satisfaction of ¿ebt, were to be pursued by the creditor. That act, after reciting that doubts were entertained whether the lands oí deceased debtors, in the hands of their heirs or devisees, should be subject to the payment of debts upon judgments against executors or administrators,
 
 in order to remove such doubts thereafter, and to direct the mode of proceeding in such cases,
 
 enacted that when in an action at law an executor or administrator should plead fully administered, no assets, or not sufficient assets to satisfy the plaintiff’s demand, and such plea should be found in favor of the defendant, the plaintiff might proceed to ascertain his demand and sign judgment; but, before taking out execution against the real estate of the deceased debtor, a writ or writs of
 
 scire facias
 
 should issue, summoning the heirs or devisees of such debt- or to shew cause wherefore execution should not issue against the real estate for the amount of such judgment, or so much thereof as the personal assets were not sufficient to discharge; and that if judgment should pass against the heirs or devisees, or any of them, execution should issue against the lands of the deceased debtor in their hands. Since this act, therefore, whatever doubts might have been entertained before, the law is positive that the lands of a deceased debtor in the hands of his heirs cannot be sold, upon a judgment obtained against an executor or administrator, until after a
 
 sci.fa.
 
 shall issue to the heirs to shew cause, if any they have, why execution of said judgment shall not issue against the lands.
 

 Now, with every disposition to view indulgently defects and errors of form in judicial proceedings, and especially in those which are had in the County Courts, we must hold that the writ, which is here relied on as a
 
 scire facias
 
 Under the act of 1784, is fatally defective, and cannot be treated as such. It does not set forth nor refer to a judgment previously rendered, in any action for any person, and of course does not call on the heirs to shew cause why execution upon that judgment shall notissue against the lands descended to them. It does not purport to be connected with any antece
 
 *229
 
 dent proceedings whatever, had in that court or in any court; and we are unable to trace a connection between the writ and the former proceedings in that court, except such as may be inferred from the identity of name of the plaintiff in those proceedings and the plaintiff in the writ, and from the circumstance that those proceedings were had against the administrator of the same person, whose heirs are by the writ directed to be summoned. The writ is an original process, of a very singular character indeed, calling on the heirs of William Arrenton to answer to a demand for $150 of Thomas Long, which is no way described, but is sought to be converted into a judgment against the lands to them descended; and is not a judicial process founded upon a matter of record or matter incidental thereto, in order to further and accomplish the end and object of the record, by insuring its effectual operation. It would violate principle to regard this as a
 
 scire facias
 
 under the act of 1784.
 

 But it is argued that it is immaterial how defective the
 
 scire facias
 
 may be, if a judgment or order of court of competent authority has been made, after notice to the parties interested, awarding the execution which did issue. ¡Suppose this position be conceded, will the case of the plaintiff be helped? He must produce some judgment or order of the court warranting
 
 that execution,
 
 What is it? What purports to be the judgment? “ Judgment pursuant to
 
 sci.faP
 
 is
 
 per se
 
 a nullity. To give it any meaning, we are obliged to recur to what is understood to be the
 
 scire facias
 
 referred to, and by a liberal aid of this we may perhaps make out that “ Thomas Long has judgment against the lands of William Arrenton, deceased, in the hands of his heirs for one hundred and fifty dollars besides interest and costs.” What would be the meaning and legal effect of a judgment ren? dered in those terms, and what kind of process might law? fully issue to enforce it, are enquiries perhaps not easily an? swered, and, at all events, unnecessary to be now considered. For it is very clear that the execution which issued, did not correspond with, and therefore was not, an execution to en? force this supposed judgment or award. It is an execution to make of the lands descended to the heirs of Wm. Arrenton, the
 
 *230
 
 sum of
 
 one hundred and sixty-eight
 
 dollars, and
 
 the
 
 costs of suit taxed by the clerk in the suit, which Thomas Long recovered against the estate of William Arrenton in the action brought by him against the administrator of the said William, and the costs of the
 
 scire facias
 
 sued out against the heirs thereon. There was indeed
 
 such a judgment
 
 recovered as is recited in the execution; but, unfortunately for the title of the lessor of the plaintiff, there was no
 
 scire facias
 
 against the heirs previously to the suing out of such execution thereon. There was, therefore, no judgment or order of court, in law, warranting that execution.
 

 Pee. Curiam* Judgment of the Superior Court affirmed with costs.