MARY P. WESTON v. JOHN L. ROPER LUMBER COMPANY.

(Filed 29 September, 1915.)

**1. Deeds and Conveyances—Title—Common Source—Paramount Title—Evi-
dence.**

Where there is evidence tending to show that the parties to the action
claim title to the land from a common source, one of them may prove an
outstanding paramount title acquired by himself; and where he has
offered in evidence a conveyance from the State Board of Education to
State's lands, and connected himself therewith, this may be rendered
nugatory by his adversary showing that the land had previously been
granted by the State to another.

**2. Deeds and Conveyances—Partition—Title—Estoppel—Evidence.**

The plaintiff's title to the lands in controversy further depending upon the defendant's being estopped to deny his title by a judgment in proceedings for partition, wherein the title to the lands was not involved (162 N. C., 165), it is held that a judgment of nonsuit was properly entered in the lower court under the authority of the former opinion, which position is further strengthened in this appeal tending to show they had no title at the time of the proceedings.

**3. Deeds and Conveyances—Judgments—Executors and Administrators—Sales—Devisee—Sci. Fa.**

A deed in plaintiff's chain of title upon which he relies which recites, in effect, that it was made under a *fieri facias* issued upon a judgment recovered against an executor of the deceased owner, and that the lands sold were in the hands of a devisee, is fatally defective, there being no recital therein of a *sci. fa.* or that any notice or other process issued to the devisee, or that any judgment was rendered condemning the lands; for the devisee is entitled to his day in court to contest the plea of fully administered, etc., and thereby relieve his land.

**4. Deeds and Conveyances—Chain of Title—Descriptions—Evidence.**

A deed in the chain of title claimed by a party in this action to recover lands is ineffectual for the purpose when it appears from the description therein that it does not purport to convey the *locus in quo*.

WALKER, J., dissenting in part; HOKE, J., concurring in the dissenting opinion.

APPEAL by defendant from *Whedbee, J.,* at March Term, 1915, of CAMDEN.

This is an action to recover land, and involves the title to tracts Nos. 1 and 4 of the juniper timbered part of that portion of the Dismal Swamp called "The New Lebanon Division," and the only question involved in the appeal is whether the plaintiff made out a *prima facie* case to go to the jury upon the question of title, to either or both of said tracts.

The title to these two tracts of land was under consideration at March Term, 1912, of the Superior Court of Camden County, and the said cause was argued before this Court at its Fall Term, 1912, and decided adversely to the plaintiff, appellant in this action, and is reported in 162 N. C., pages 165 *et seq.* Upon said appeal being certified to the Superior Court of Camden County, the court ordered a nonsuit, and plaintiff instituted this new action, making practically the same allegations of title and trespass.

The court below held that on all the evidence offered, plaintiff had not made out any title.

The opinion of the Court, by *Mr. Justice Brown,* on the former appeal discloses, according to said opinion, certain defects in the title as it was then presented, but which the plaintiff has undertaken to remedy in this case.

In that appeal it will be noted that the plaintiff relied on what is

known as and will be hereinafter referred to as *The New Lebanon Division,* for a common source of title. In that division tract No. 1 was allotted to Enoch Sawyer, and tract No. 4 was allotted to Fred B. Sawyer and Samuel Proctor. Tract No. 12 was allotted to Mills and Josiah Riddick.

Plaintiff then offered a deed from Enoch Sawyer to Cary Weston for lot No. 1 and a deed from Samuel Proctor to Cary Weston for his interest in lot No. 4, and evidence to show that he was the only living descendant of said Cary Weston.

Plaintiff then offered a deed from Mills Riddick to William B. Whitehead, a deed from William B. Whitehead to Baird & Roper, and a deed from Baird & Roper to the defendant for tract No. 12 of that division, thus connecting the plaintiff and defendant with said division; claiming it to be a common source of title.

The defendant, for the purpose of showing an independent and outstanding paramount title, introduced a deed from the State Board of Education to George W. Roper, dated in 1904, and a deed from George W. Roper to the defendant in 1905, which covered the same land.

The plaintiff then offered section 1 of the amended complaint and section 1 of the answer thereto, for the purpose of showing that the lands in controversy had been granted to Benjamin Jones on 10 July, 1788; and said answer on that allegation was as follows: "The defendant admits that on 10 July, 1788, the State of North Carolina issued a grant to one Benjamin Jones. That there appears upon the books found in the office of the register of deeds of Camden County, in Book D, page 163, what purports to be copy of said grant. The other matters alleged in section 1 are denied."

It is held in the opinion of the Court that section 1 of the answer denied not only the validity of that grant, but, also, that its descriptive words embraced the land in controversy, and that the record failed to disclose that there was any evidence that the description in the grant covered the lands in controversy, and, therefore, plaintiff could not recover in that suit, and ordered a nonsuit, stating:

1. That there is no strict estoppel operating in favor of the plaintiff against the defendant in respect to lots 1 and 4;

2. That the parties do not claim the same tract of land under the same common source;

3. That if that were so (that is, if they did hold the same tract of land under the same common source), the defendant has shown an outstanding legal title, paramount, and connected itself with it.

On the second trial plaintiff offered a grant from the State of North Carolina to one Benjamin Jones, dated 10 July, 1788, and offered evidence that the grant covered the land in controversy.

This is the material difference between the two appeals as to lot No. 1.

As to lot No. 4, the plaintiff offered two chains of title. The first of these is as follows:

(1) Grant to Benjamin Jones.

(2) Deed from Benjamin Jones to Thomas Harvey.

(3) Deed from Thomas Harvey and Benjamin Jones to John Shaw.

(4) Deed from John Show to Samuel Bartleson.

(5) Deed from Samuel Bartleson to John and David Christie.

(6) Deed from Isaac Lamb, sheriff, to Robert Porter.

(7) Deed from John and David Christie to Caleb North, Charles Jolly, and Robert Porter, trustees.

(8) Power of attorney from Caleb North and Robert Porter to F. B. Sawyer.

(9) Deed from Robert Porter and Caleb North, by F. B. Sawyer, attorney, to Joseph and Bornt Seguine.

(10) Deed from Robert Porter and Caleb North, by F. B. Sawyer, attorney, to Samuel Weston.

(11) Deed from Seguine and Weston to Samuel Proctor.

In the second, the first seven deeds are the same as those in the first chain of title, and in this chain of title the plaintiff relies upon a deed from Isaac Lamb, sheriff, to Richard Morris, which, in addition to reciting a levy under a *fieri facias* and a sale thereunder, contains the following recitals:

Whereas by a writ of *fieri facias* issued out of the county court of Camden, bearing date February Term, 1810, directed to the sheriff of Camden County, whereby he was commanded in the following words, viz.:

*State of North Carolina,*
  *To the Sheriff of Camden County—Greeting:*

We command you that of the lands and tenements whereof Will Aitchison died seized and possessed in your county, in the hands of William Nicholson, and which he holds by devise from the said William Aitchison, you cause to be made the sum of one thousand and twenty pounds three shillings and fourpence, which lately in the county court of pleas and quarter sessions held for Camden County Benjamin Jones's executors recovered against Mary Aitchison, executrix of William Aitchison, deceased, for damages. And also the sum of nine pounds seven shillings and sixpence for the cost and charges by him in suit expended, whereof the said Mary Aitchison, executrix as aforesaid, is convicted and liable as to us appears of record. And have you the said moneys before the justices of the said court to be held for the said county at the courthouse in Camden on the first Monday in February next, then and

there to render to the said. Benjamin Jones's executors for his damages, cost and charges aforesaid. And have you then and there this writ. Witness Malachi Sawyer, clerk of the said court, the 9th day of November, in the 34th year of the Independence of the State, Anno Dom. 1809.

(Test.) MALACHI SAWYER, C. C. C.

In the New Lebanon Division, which is relied on by the plaintiff as an estoppel, there were several distinct tracts of land, one of which was called the juniper swamp land or juniper timbered land, and another tract of upland called the mill swamp.

The plaintiff introduced evidence tending to show that the juniper timbered land was covered by the grant to Benjamin Jones, but there was no evidence that the grant covered the upland known as the mill swamp land.

The deed from Seguine and Weston to Samuel Proctor purports to convey "the one-sixteenth part of the upland or mill tract of the New Lebanon estate."

At the conclusion of the evidence his Honor entered judgment of nonsuit, and the plaintiff excepted and appealed.

*Charles Whedbee and Ward & Thompson for plaintiff.*
*W. B. Rodman, J. K. Wilson, W. L. Halstead, and Small, MacLean, Bragaw & Rodman for defendant.*

ALLEN, J. No case has been more carefully investigated or more deliberately considered by this Court than the one involving the same subject-matter between the same parties, reported in 162 N. C., 165, and the only material difference in the facts, so far as they relate to lot No. 1, is that upon the first appeal the plaintiff did not introduce a grant from the State covering the land in controversy, while on this appeal a grant from the State is in evidence.

This difference in the facts changes the legal aspect of the two appeals, because, with no grant in evidence, the Court dealt with the deed of the State Board of Education to the defendant as a paramount outstanding title which the defendant had the right to acquire; but when it is shown that the land had been previously granted, as now appears, the deed of the State Board of Education has no legal effect, and must be eliminated from consideration.

It will be seen, however, from an examination of the opinion of the Court in the former appeal, written by *Associate Justice Brown,* that it is not based alone upon the title of the defendant procured from the State Board of Education, but that, in addition thereto, it was held that as partition proceedings are primarily for the purpose of severing the

possession, and as there was no allegation in the petition that the tenants in common were the owners in fee, and as title was not put in issue in the proceeding, that the partition proceeding of 1815 did not operate as an estoppel, and as the plaintiff could not recover unless it was held that the parties to this record were estopped, the judgment of nonsuit then entered was sustained upon this additional ground.

A separate concurring opinion, in which the *Chief Justice* then concurred, and in which *Associate Justice Brown* now concurs, was then filed by the writer of this opinion, beginning at page 174, in which the consideration of the deed from the State Board of Education was entirely eliminated and which rested upon two propositions: (1) that the implied warranty of title existing between tenants in common is broken by alienations, and does not prevail between the grantees of the several tenants acquiring title after the partition. (2) That the partition proceeding of 1815 did not constitute an estoppel as to the ownership in fee of the land in controversy.

The concluding sentence of this last opinion is: "This disposes of the appeal, and it is unnecessary to discuss the validity of the deed of the State Board of Education to the defendant or of the right of the defendant to rely upon this deed as an after acquired title."

The reasons and authority then relied on in support of the opinion of the Court are satisfactory to us, and in our judgment are conclusive against the title of the plaintiff to lot No. 1.

The introduction of the grant from the State to Benjamin Jones, instead of weakening this position, that the defendants are not estopped to deny that the parties to the partition proceeding were the owners in fee of the land described therein, confirms it, because it shows that the fee-simple title was not then in the parties to the proceeding, but in Benjamin Jones under the grant.

We are also of opinion that his Honor properly nonsuited the plaintiff as to lot No. 4.

One of the deeds in the first chain of title to this lot, introduced by the defendant, and which is necessary to complete it, is the deed from Seguine and Weston to Samuel Proctor, and it appears from the description in this deed that it does not purport to convey any part of the "juniper timbered land," but only an upland tract, and there is no evidence that the grant from the State covers the upland.

In the second chain of title to lot No. 4, a deed upon which the plaintiff has to rely is one from Isaac Lam, sheriff, to Richard Morris, which recites that it was made pursuant to a sale under a *fieri facias* issued upon a judgment recovered by Benjamin Jones's executors against Mary Aitchison, executrix of William Aitchison, and that the land sold was in the hands of William Nicholson, devisee.

There is no recital in this deed that any notice or other process issued to the devisee or that any judgment was rendered condemning the lands in the hands of the devisee, and this is fatal to the deed.

In *Barrow v. Arrenton,* 23 N. C., 228, *Gaston, J.,* referring to the act of 1784, says: "Since this act, therefore, whatever doubts might have been entertained before, the law is positive that the lands of a deceased debtor in the hands of his heirs cannot be sold, upon a judgment obtained against an executor or administrator, until after a *sci. fa.* shall issue to the heirs to show cause, if any they have, why execution of said judgment shall not issue against the land."

*Judge Gaston* further says: "That act, after reciting that doubts were entertained whether the lands of deceased debtors, in the hands of their heirs or devisees, should be subject to the payment of debts upon judgment against executors or administrators, *in order to remove such doubts thereafter, and to direct the mode of proceeding in such cases,* enacted that when in an action at law an executor or administrator should plead fully administered, no assets, or not sufficient assets to satisfy the plaintiff's demand, and such plea should be found in favor of the defendant, the plaintiff might proceed to ascertain his demand and sign judgment; but before taking out execution against the real estate of the deceased debtor, a writ or writs of *scire facias* should issue, summoning the heirs or devisees of such debtor to show cause wherefore execution should not issue against the real estate for the amount of such judgment, or so much thereof as the personal assets were not sufficient to discharge; and that if judgment should pass against the heirs or devisees, or any of them, execution should issue against the lands of the deceased debtor in their hands."

The purpose of the *sci. fa.* to the heir or devisees was to give him a day in court in order that he might contest the plea of fully administered and show that there was personal estate applicable to the payment of the judgment, and thereby relieve his land.

The judgment must be

Affirmed.

WALKER, J., dissenting in part: I cannot agree to the opinion of the Court in this case so far as it affects lot No. 1. I still think that the defendants were estopped by the partition proceedings of 1815. My views, in which *Justice Hoke* concurred, are fully stated in the report of the former appeal, 162 N. C., 165, and I will not repeat them here. The opinion of the Court, to my mind, is based upon two errors, one of law and the other of fact. The error in law is the holding that the judgment in a partition proceeding does not create an estoppel as between the tenants to deny the title or ownership, and the error of fact is that the court

assumes, contrary to the record in the proceeding of 1815, that there was no allegation that the tenants were the owners of the land, and consequently there was no adjudication as to the title; whereas an inspection of the record will disclose that such was not the case; all of which was set out by me in my former dissenting opinion.

I concur in the opinion of the Court as to lot No. 4.

JUSTICE HOKE concurs in the dissenting opinion of WALKER, J.